UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARNETTE HOLMES, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 10-5384 |
| v. | : | MEMORANDUM OPINION & ORDER |
| BRIAN CUSHNER and CITY OF MILLVILLE, | : | |
| Defendants. | : | |

This matter is before the Court on motion of Defendants Brian Cushner and the City of Millville for summary judgment pursuant to Federal Rule of Civil Procedure 56. Oral argument was heard on the motion on November 8, 2012, and the record of that proceeding is incorporated here. For the reasons placed on the record that day, as well as those articulated below, the motion will be granted in part and denied in part.

## Background

On July 3, 2008, the Millville Police were called to Plaintiff Charnette Holmes's residence in the City of Millville due to a disturbance occurring outside. Defendant Officer Brian Cushner arrived on the scene along with Officer Angel Lopez. Lopez testified that when he arrived on scene, he "observed two females yelling at each other getting ready to fight." Lopez Dep., p. 26.

Plaintiff's niece, Destine Colvin, had been arguing loudly with another woman, LaToya Hadden in front of Plaintiff's house, where Colvin lived at the time. As the two officers walked toward Plaintiff's house, Plaintiff attempted to intercede, stating "Excuse me, sir, I'm the homeowner here." Pl. Dep., p. 74. According to Plaintiff, "I just touched him, 'Sir, you know,' he didn't want me to touch him. I was trying to tell him the person

that created this had pulled off, who came here with the problem [Hadden] had pulled off, but he proceeded inside the gate up to the steps." Pl. Dep., p. 74. Cushner brushed Plaintiff's hand aside as she stated, "Sir, I'm trying to explain to you that the problem that was here just left. You let them drive off." Pl. Dep., p. 76, 77. "I was simply trying to explain to him that I'm the homeowner and the people that came – that started the chaos was leaving. I was trying to explain the situation to him. And I don't know if he didn't want to hear it, I don't know, but he told me I was under arrest." Pl. Dep., p. 78-79. According to Plaintiff, Cushner also told her, "Don't put your hands on a fucking cop." Cushner denies using this language.

    Cushner testified that when he began walking toward Colvin, Plaintiff approached him, saying she wanted to speak with him. Cushner Dep., p. 50-52. She grabbed his arm and he "yelled at her don't touch me." Cushner Dep., p. 54. Then, Plaintiff told Cushner he could not speak to her "that way." Cushner Dep., p. 62. Because Plaintiff stopped Cushner from approaching Colvin to question her, Cushner informed Plaintiff she was under arrest. Cushner Dep., p. 81-88.

    Lopez testified that he observed Plaintiff "grab the patrolman's arm and place herself in between Patrolman Cushner and Destine Colvin." Lopez Dep., p. 37. Lopez did not observe any physical altercation between Plaintiff and Cushner and did not know exactly "what was transpiring" between the two because he was dealing with Plaintiff's son, but he has testified that Plaintiff placed herself between Cushner and Colvin, but she did not appear to be threatening in any way. Lopez Dep., p. 39, 46, 65, 68.[1]

---

    [1]Lopez also testified that there was no interaction between Cushner and Plaintiff's son (Berry). Lopez Dep., p. 53-56.

Cushner instructed Plaintiff to put her hands behind her back so he could handcuff her.  Plaintiff testified, "I think I put both of them behind my back.  I just think that I didn't put it back far enough so he pulled the one arm back further.  Because I kept stating that my arms were behind my back."  Pl. Dep., p. 105.  In answer to Interrogatories, Plaintiff affirmed, "Officer Cushner sprayed Plaintiff with mace and stated now you're resisting.  After Plaintiff was jumping all around after being sprayed at close range in her eyes, nose, and throat, he then slammed Plaintiff to the ground with great force."  Pl. Dep., p. 105.

Cushner testified, "it was obvious that she wasn't going to give her arms up.  So I took her to the ground, . . . reached around and sprayed her [with department-issued pepper spray]."  Cushner Dep., p. 101, 105.  Plaintiff was transported to the county jail, but the nurse there would not admit her until she was seen in the local emergency room.  Cushner Dep., p. 137-38.  A follow-up appointment with Plaintiff's doctor revealed "evidence of trauma" including an abrasion on her right elbow and a spot of blood in both ear canals that "could be from head trauma."  Mortensen Dep., p. 30, 31, 35.  Plaintiff also complained of neck pain and a bad headache; she exhibited a decreased range of motion in her neck, had a left shoulder injury, and was crying and very upset during the exam.  Mortensen Dep., p. 37.

Plaintiff was convicted in Millville Municipal Court of hindering the apprehension of another and resisting arrest.

**Discussion**

**A. Summary Judgment Standard**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party

must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B. 42 U.S.C. § 1983**

Plaintiff's Constitutional claims are governed by 42 U.S.C. § 1983.  A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, a plaintiff must demonstrate two essential elements to maintain a claim under

section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Williams v. Borough of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).

  A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind,  the alleged violation of Plaintiff's rights.  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).  Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom.  Canton v. Harris, 489 U.S. 378, 388 (1989).  "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

  The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). See also, Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of

proving its applicability rests with the defendant.  See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him.  Graham v. Conner, 490 U.S. 386, 397 (1989).  While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id.  Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396).  See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

**C. Analysis**

Plaintiff states a claim under the Fourth Amendment pursuant to 42 U.S.C. § 1983. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

Specifically, in her single-count Complaint, Plaintiff alleged claims for false arrest, excessive force, and, as against the City of Millville, a policy or custom of failing to adequately train and/or supervise its officers.

Through briefing, Plaintiff conceded that her claim of false arrest was precluded

8

by her municipal court conviction pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In <u>Heck</u>, the Supreme Court stated:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

<u>Id.</u> at 486-87 (footnotes omitted). Thus, under <u>Heck</u>, a finding in favor of Plaintiff on her false arrest claim would imply the invalidity of the outcome of Plaintiff's municipal court conviction. Therefore, that claim will be dismissed.

The defense also argues that, under the facts of this case, <u>Heck v. Humphrey</u> bars Plaintiff's claim of excessive force because the factual basis for Plaintiff's resisting arrest and hindering apprehension conviction is inextricably intertwined with her excessive force claim. While the Court appreciates the Defendants' argument, it nonetheless finds that Plaintiff's resisting arrest conviction does not necessarily preclude her excessive force claim against Cushner. See <u>Garrison v. Porch</u>, 376 Fed. Appx. 274, 277-78 (3d Cir. 2010) (citing <u>Nelson v. Jashurek</u>, 109 F.3d 142, 146 (3d Cir. 1997) ("[A] reasonable juror, considering the totality of the circumstances, could find that the arrestee resisted arrest, but was still subjected to an unreasonably excessive level of force by the police officer in response."). Acknowledging that the record reflects that Plaintiff placed

9

herself between Cushner and Colvin, Cushner was still constrained to use only the level of force that was reasonable to effect Plaintiff's arrest. Because there exist genuine issues of material fact regarding the reasonableness of the extent of force used to effect the arrest, the Court will not grant summary judgment on Plaintiff's excessive force claim.

For the same reason, the Court cannot grant summary judgment in favor of Cushner based upon qualified immunity, as there are genuine issues of material fact as to whether his use of force to effect Plaintiff's arrest was objectively reasonable. Though qualified immunity is a question of law, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). Here, viewing the facts most favorably to the Plaintiff and considering the totality of the circumstances, the evidence may reasonably support a determination that Cushner's "slamming" Plaintiff to the ground and subsequent use of pepper spray were an unreasonable and excessive response to Plaintiff's actions at the time. With facts in dispute and issues of credibility that impact the determination of excessive force which must be resolved by a jury, the Court cannot grant Cushner qualified immunity on the excessive force claim at this time.

Regarding the City of Millville, Plaintiff has not shown a policy, attributed it to the city itself, with a causal link between execution of the policy and the injury suffered. See, e.g., McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009) ("[A plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

Plaintiff has cited to a February 2008 incidence of excessive force used by Millville police officer Carlos Drogo. A single case against a non-Defendant officer,

10

however, cannot establish "knowledge of a prior pattern of similar incidents and circumstances under which a supervisor's inaction could be found to have communicated a message of approval." Hansell v. City of Atlantic City, 152 F. Supp. 2d 589, 609 (D.N.J. 2001), aff'd 46 Fed. Appx. 665 (3d Cir. 2002) (quoting Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir. 2002)). Further, in this instance, the City of Millville initiated an internal affairs investigation in conjunction with the Cumberland County Prosecutor's Office and, as a result, Carlos Drogo agreed to resign. Rabbai Aff., ¶ 3-4.

Finally, Plaintiff's argument that Millville officers were unlawfully present in her house on March 29, 2011 cannot be used to support her claim of a custom or policy in existence in 2008. Therefore, summary judgment will be granted in favor of the City of Millville.

## Discussion

For these reasons, as well as those expressed on the record during oral argument,

IT IS ORDERED on this 19th day of December, 2012 that the Defendants' motion for summary judgment [23] is hereby GRANTED IN PART and DENIED IN PART.

      /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.